UNITED STATES of America,

v.

George Charles REICHERTER, George C. Reicherter, Appellant.

No. 80–2424.

United States Court of Appeals,
Third Circuit.

Argued Feb. 11, 1981.

Decided May 5, 1981.

Peter F. Vaira, U. S. Atty., Walter S. Batty, Jr., Asst. U. S. Atty., Chief, Appellate Div., Joanne A. Epps, Asst. U. S. Atty., (argued), Philadelphia, Pa., for appellee.

Richard R. Fink (argued), Fink, Fink & Associates, Levittown, Pa., for appellant.

Before ALDISERT and HIGGINBOTHAM, Circuit Judges, and LACEY, District Judge.*

## OPINION OF THE COURT

LACEY, District Judge.

The defendant was convicted of the distribution and aiding and abetting in the distribution, of one ounce of methamphetamine (21 U.S.C. § 841; 18 U.S.C. § 2) and of the illegal manufacture of methamphetamine (21 U.S.C. § 841). On this appeal he contends the district court erred in denying his pretrial motions for suppression and severance. He also asserts that there was insufficient evidence to support his conviction on counts two and four of the indictment, for aiding and abetting methamphetamine sales on December 6, 1979.

On three separate occasions in late 1979, officers of the Philadelphia Police Department, working with the Drug Enforcement Agency (DEA), collected defendant's trash while posing as trash collectors. Although defendant's trash was normally stored within a fence surrounding his property, on trash collection days he placed it outside this enclosure in an area accessible to the public and used by the public for walking. The officers collected the garbage only in this publicly accessible area. The trash was found to contain methamphetamine. This formed the basis for a probable cause affidavit for a search warrant of defendant's home.

The evidence presented at trial consisted in large part of testimony by Lawrence Fanelli, a DEA informer. After several discussions with defendant regarding the purchase of methamphetamine, Fanelli went to defendant's house on December 6, 1979, to consummate the transaction. Although defendant was not home at this time, his co-defendant, Ronald McCaul, answered the door and asked Fanelli if he still wanted "the thing." Receiving an affirmative response, McCaul sold Fanelli a gram of what was believed to be methamphetamine for $50 with the understanding that, if Fanelli found the substance satisfactory, McCaul would sell him "the rest" of it.

After delivering the methamphetamine to a Philadelphia police officer, Fanelli met McCaul later that day and they proceeded to defendant's house where McCaul took $800 from Fanelli and went to the porch door at the back of the house. As McCaul returned to the car, the defendant, standing on the porch, called to Fanelli that some of the substance McCaul was carrying was for him. Again, after receiving the substance,

---

* Honorable Frederick B. Lacey, United States District Judge for the District of New Jersey, sitting by designation.

along with $50 change, Fanelli delivered these items to the Philadelphia police officer.

Fanelli also testified that beginning in May or June of 1979, he obtained methamphetamine from the defendant for his personal consumption. During this period, he observed defendant manufacturing methamphetamine. This testimony was supported by Edward Minner who testified that he too had purchased methamphetamine from defendant and observed what appeared to be a laboratory for the manufacture of methamphetamine in defendant's house.

Stephen Lapenta, one of the Philadelphia policemen who had posed as a trash collector, also testified in support of the government's contention that the defendant manufactured methamphetamine. After finding methamphetamine in the collected trash, a search of defendant's house on December 18, 1979, resulted in the seizure of several different powders and substances and a scale and hot plate.

Finally, a government chemist testified that many of the powders and substances seized from defendant's home were methamphetamine and that several items seized were used in manufacturing methamphetamine.

## I.

Defendant claims that under *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), he had a reasonable expectation of privacy in the trash he placed in a public area to be picked up by trash collectors such that, when the police officers looked through the garbage and seized the methamphetamine, they violated the fourth amendment. A mere recitation of the contention carries with it its own refutation.

Every circuit considering the issue has concluded that no reasonable expectation of privacy exists once trash has been placed in a public area for collection. *See, e. g., United States v. Vahalik*, 606 F.2d 99, 101 (5th Cir. 1979) (per curiam), *cert. denied*, 444 U.S. 1081, 100 S.Ct. 1034, 62 L.Ed.2d 765 (1980); *United States v. Crowell*, 586 F.2d 1020 (4th Cir. 1978), *cert. denied*, 440 U.S. 959, 99 S.Ct. 1500, 59 L.Ed.2d 772 (1979); *United States v. Shelby*, 573 F.2d 971 (7th Cir.), *cert. denied*, 439 U.S. 841, 99 S.Ct. 132, 58 L.Ed.2d 139 (1978); *Magda v. Benson*, 536 F.2d 111 (6th Cir. 1976) (per curiam); *United States v. Mustone*, 469 F.2d 970 (1st Cir. 1972); *United States v. Dzialak*, 441 F.2d 212 (2d Cir.), *cert. denied*, 404 U.S. 883, 92 S.Ct. 218, 30 L.Ed.2d 165 (1971). *See also United States v. Minker*, 312 F.2d 632 (3d Cir. 1962), *cert. denied*, 372 U.S. 953, 83 S.Ct. 952, 9 L.Ed.2d 978 (1963) (decided before *Katz* ). The reasoning underlying these decisions is clear and persuasive. As stated by the Seventh Circuit in *Shelby* :

[T]he placing of trash in garbage cans at a time and place for anticipated collection by public employees for hauling to a public dump signifies abandonment.

*Id.* 573 F.2d at 973. Having placed the trash in an area particularly suited for public inspection and, in a manner of speaking, public consumption, for the express purpose of having strangers take it, it is inconceivable that the defendant intended to retain a privacy interest in the discarded objects. If he had such an expectation, it was not reasonable. Accordingly, the district court properly denied his motion to suppress.

## II.

Defendant contends that the district court committed reversible error in denying his motions under Fed.R.Cr.P. 14 for severance of the distribution counts (Counts 2 and 4) from the manufacturing count (Count 5) of the indictment.[1] He argues that failure to sever the offenses prejudiced him in three ways: first, in considering each count, the jury may have cumulated all the evidence against him, whether relat-

---

1. Rule 14 reads in pertinent part:

If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires....

ing to the distribution counts or the manufacturing count; second, not all the evidence introduced against the defendant concerning both offenses would have been admissible at separate trials on each type of offense; and third, defendant, desiring to testify as to the distribution counts but not the manufacturing count, surrendered his right to testify because of joinder of the offenses, fearing that testifying only on some counts would adversely affect his chances of acquittal on the remaining count.

■ Motions for severance rest in the sound discretion of the trial judge, whose determination should not be disturbed in the absence of an abuse of discretion. *United States v. Boyd*, 595 F.2d 120, 125 (3d Cir. 1978). The trial judge is best situated to weigh possible prejudice to the defendant against interests of judicial economy. *See United States v. Kelley*, 635 F.2d 778, 780–81 (10th Cir. 1980); *United States v. Thomas*, 610 F.2d 1166, 1170 (3d Cir. 1979). The defendant faces a heavy burden in establishing an abuse of discretion. *United States v. Rosa*, 560 F.2d 149, 154 (3d Cir.), *cert. denied*, 434 U.S. 862, 98 S.Ct. 191, 54 L.Ed.2d 135 (1977). Mere allegations of prejudice are not enough; and it is not sufficient simply to establish that severance would improve the defendant's chance of acquittal. *United States v. Kelley, supra*, 635 F.2d at 680; *United States v. Iezzi*, 451 F.Supp. 1027, 1033 (W.D.Pa.1976), *aff'd sub nom. United States v. Boscia*, 573 F.2d 827 (3d Cir.), *cert. denied*, 436 U.S. 911, 98 S.Ct. 2248, 56 L.Ed.2d 411 (1978). Rather, he must demonstrate clear and substantial prejudice resulting in a manifestly unfair trial. *United States v. Herrera*, 584 F.2d 1137, 1143 (2d Cir. 1978); *United States v. Alpern*, 564 F.2d 755, 758 (7th Cir. 1977).

■ The trial judge acted well within his discretion in denying defendant's motion for severance. Defendant pinpoints no specific instances of prejudice. He merely speculates that the jury must have interchangeably applied the evidence presented on the various counts. Of primary concern in considering a motion for severance is "whether the jury can reasonably be expected to compartmentalize the evidence," as it relates to each count by following the instructions of the trial court. *United States v. DeLarosa*, 450 F.2d 1057, 1065 (3d Cir. 1971), *cert. denied*, 405 U.S. 927, 92 S.Ct. 978, 30 L.Ed.2d 800 (1972), *quoted in United States v. Boyd, supra*, 595 F.2d at 125. There is no indication that the jury had any difficulty in segregating and considering the relatively simple facts pertaining to the distinct counts. Moreover, the trial judge carefully instructed the jury of the necessity to consider the evidence relating to each count separately. Absent a clear showing that the jury was unable to follow these instructions, prejudice cannot be established.

■ The contention that not all the evidence introduced against the defendant at trial concerning both offenses would have been admissible at separate trials on each type of offense is refuted by the specific finding of the district court that the evidence pertaining to the manufacturing count would have been admissible in a trial on the distribution counts under Fed.R. Evid. 404(b),[2] a finding with which we agree. *United States v. Long*, 574 F.2d 761 (3d Cir.), *cert. denied*, 439 U.S. 985, 99 S.Ct. 577, 58 L.Ed.2d 657 (1978).

Defendant's claim, that he was prejudiced by the joinder of offenses because it led him not to exercise his right to testify at all due to the adverse inferences which might be drawn by a jury from his failure to testify on the manufacturing count while testifying on the distribution counts, relies heavily upon *Cross v. United States*, 335 F.2d 987 (D.C.Cir.1964). In *Cross* the court of appeals reversed defendant's conviction, hold-

---

2. Rule 404(b) provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

ing that the district court had abused its discretion in failing to sever the offenses under Fed.R.Cr.P. 14. The court found prejudice because the "accused wishe[d] to testify on one but not the other of two joined offenses which [were] clearly distinct in time, place and evidence." *Id.* at 989. Subsequent decisions of that court make clear that it requires severance only where the "defendant makes a convincing showing that he has both important testimony to give concerning one count and strong need to refrain from testifying on the other." *Baker v. United States*, 401 F.2d 958, 977 (D.C.Cir.1968), *cert. denied*, 400 U.S. 965, 91 S.Ct. 367, 27 L.Ed.2d 384 (1970). In order to make such a showing, "it is essential that the defendant present enough information—regarding the nature of the testimony he wishes to give on one count and his reasons for not wishing to testify on the other—to satisfy the court that the claim of prejudice is genuine...." *Id.* at 977. *See also Bradley v. United States*, 433 F.2d 1113, 1123 (D.C.Cir.1969).

In the instant case, not only did defendant fail to detail the evidence he wished to give; he never specifically informed the district court of an intention or desire to testify on his own behalf. He simply stated that he intended to present an alibi defense. The defendant argues here that it would have been necessary for him to testify to present this defense; however, an alibi defense could have been presented, without calling the defendant, through other witnesses who could attest to the alibi. Indeed, it does not even appear that the defendant informed the court what the alibi was or who he intended to call as witnesses at trial. Finally, defendant never did present an alibi defense. No claim can be made—indeed, none is made—that defendant was forced to forego his alibi defense because the court did not permit severance. *See generally United States v. Thomas, supra*, 610 F.2d at 1170.

Accordingly, we find no merit to the defendant's claim of prejudice from the denial of his motion for severance.

### III.

Giving "full play" to "the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact," *United States v. Phifer*, 400 F.Supp. 719, 724 (E.D.Pa.1975), *aff'd*, 532 F.2d 748 (3d Cir. 1976), it is clear that the evidence viewed in a light most favorable to the government, is sufficient to sustain defendant's conviction of aiding and abetting on the distribution counts. *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942). In determining whether a person has aided and abetted another in the commission of a crime, the standard applied is whether that person " 'in some sort associate[d] himself with the venture, ... participate[d] in it as in something that he wishe[d] to bring about, [sought] by his action to make it succeed.' " *Nye & Nissen v. United States*, 336 U.S. 613, 619, 69 S.Ct. 766, 769, 93 L.Ed. 919 (1949) (quoting *United States v. Peoni*, 100 F.2d 401, 402 (2d Cir. 1938)). *See also United States v. Pearlstein*, 576 F.2d 531, 546 (3d Cir. 1978). The evidence here established that defendant set in motion the events leading to the two sales by meeting with Fanelli and arranging to sell him an ounce of methamphetamine. As a result of these initial conversations, Fanelli went to defendant's house to consummate the sale. After inquiring whether defendant was home, Fanelli was told by co-defendant McCaul that he was not. McCaul asked Fanelli, however, whether he "still wanted the thing" obviously referring to the methamphetamine. The jury could have reasonably inferred that McCaul knew of the sale which was set up as a result of conversations with the defendant. After Fanelli approved of the sample he was sold, McCaul took him to defendant's house to complete the sale. Defendant demonstrated a high degree of control over the transaction when, after McCaul came out from the porch with the methamphetamine, defendant emerged from the porch as well, calling to Fanelli that two grams of the substance were for him (Fanelli). Quite clearly, without the defendant the sales would have never taken place. Accordingly, we find that defendant

"participated in" the sales and manifested "a purposive attitude" in making them succeed. *United States v. Peoni, supra,* 100 F.2d at 402.

## IV.

The judgment of the district court will be affirmed.