NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-1630
_____

UNITED STATES OF AMERICA

v.

HAROLD MARTINEZ,
a/k/a JAROL

Harold Martinez,
Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-09-cr-00669-003)
District Judge:  Honorable Juan R. Sánchez
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
January 23, 2012

Before:  FISHER, GREENAWAY, JR. and ALDISERT, *Circuit Judges*.

(Filed: February 7, 2012)
_____

OPINION OF THE COURT
_____

FISHER, *Circuit Judge*.

    Harold Martinez ("Martinez") appeals from the District Court's final judgment of

conviction and sentence.  For the reasons discussed below, we will affirm.

1

**I.**

We write principally for the parties, who are familiar with the factual context and legal history of this case. Therefore, we will set forth only those facts necessary to our analysis.

From late August 2009 until September 16, 2009, Martinez was a member of a group that traveled from Bronx, New York, to Philadelphia, Pennsylvania, to rob a "stash house," where the group believed drug dealers stored their narcotics and drug proceeds. Members of the group included co-defendants Roberto Antonio Melendez Placencia ("Melendez Placencia"), Adalberto Noboa Quezada ("Noboa Quezada"), Junior Gonzalez Gonzalez ("Gonzalez Gonzalez"), and Manuel Jimenez ("Jimenez"). Martinez, who drove a Lincoln Town Car for his job as a licensed taxicab driver, served as a driver and lookout for the group.

Federal agents first learned of the planned robbery from an informant, Carlos Jackson Escolastico ("Escolastico"), who was also a member of the group. When the group congregated at a Philadelphia Taco Bell parking lot on September 16, 2009, federal authorities arrested all six individuals, including Escolastico and Martinez. Agent Alex Zuchman ("Agent Zuchman") of Homeland Security Investigations asked Martinez in English whether he would consent to the search of the Lincoln Town Car, and a Spanish-speaking officer translated his request. Agent Zuchman did not tell Martinez he had the right to refuse consent. Martinez later testified that he consented to the search. Inside the

2

trunk of Martinez's Lincoln Town Car, federal agents found a bag containing bolt cutters, black gloves, and two long screwdrivers.

After the arrest, Martinez was transported to the Federal Detention Center ("FDC") in Philadelphia, along with his co-defendants Melendez Placencia, Noboa Quezada, Gonzalez Gonzalez, and Jimenez. Escolastico, however, was put in a separate vehicle from the other five men and was not taken to the FDC. At the FDC, Martinez invoked his right to remain silent. Thereafter, federal agents escorted Martinez and his four co-defendants in an elevator to another floor within the prison for processing. While on the elevator, Melendez Placencia said to the group in Spanish, "Look who's missing," in reference to the absent Escolastico. Martinez responded in Spanish, "Yea, he's probably putting on his uniform already." The conversation was overheard by a Spanish-speaking agent.

In October 2009, approximately one month after the arrests, Martinez asked three of his co-defendants to sign an affidavit stating that Martinez was "only a cab driver and had nothing to do with this crime." Melendez Placencia, Noboa Quezada, and Gonzalez Gonzalez later testified that they signed the affidavit knowing it was false.

Martinez was charged with conspiracy to commit Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a) (Count One); conspiracy to possess with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. § 846 (Count Two); attempted Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a) (Count Three); possession of a

3

firearm in furtherance of a crime of violence and a drug trafficking crime, in violation of 18 U.S.C. § 924(c) (Count Four); and obstruction of justice, in violation of 18 U.S.C. § 1503 (Count Five). Martinez filed a motion to dismiss Count Five or, in the alternative, sever the trial of Count Five from the other four counts in the indictment. He also filed a motion to suppress his statement made in the FDC elevator and a motion to suppress the physical evidence seized from his Lincoln Town Car. The District Court denied all three motions. Martinez filed a timely appeal of the District Court's judgment.

## II.

Under 18 U.S.C. § 3231, the District Court properly exercised jurisdiction. We have appellate jurisdiction under 28 U.S.C. § 1291.

The District Court's denial of a motion for severance is reviewed for abuse of discretion. *United States v. Hart*, 273 F.3d 363, 369 (3d Cir. 2001) (citation omitted). We review the District Court's denial of a motion to suppress for "clear error as to the underlying factual findings" and exercise "plenary review of [its] application of the law to those facts." *United States v. Perez*, 280 F.3d 318, 336 (3d Cir. 2002) (citation omitted).

## III.

Martinez first submits that the District Court abused its discretion when denying his motion to sever the trial of the obstruction of justice charge (Count Five) from that of the remaining charges in the indictment. A defendant bears a heavy burden in showing

4

that a district court abused its discretion in denying a motion for severance. *United States v. Reicherter*, 647 F.2d 397, 400 (3d Cir. 1981). In order to succeed on appeal, "the defendant must pinpoint 'clear and substantial prejudice' resulting in an unfair trial." *United States v. McGlory*, 968 F.2d 309, 340 (3d Cir. 1992) (citation omitted).

Martinez asserts that the obstruction of justice charge should have been withheld from the jury until after it reached a verdict on the remaining counts because the contemporaneous presentation of evidence relating to the obstruction of justice charge with evidence pertaining to the other charges prejudiced his trial. We reject his contention because blanket statements alleging prejudice without evidence of specific instances of prejudice are insufficient to override the District Court's discretion. *See Reicherter*, 647 F.2d at 400. Moreover, the District Court instructed the jury to consider the evidence on each count of the indictment separately, so prejudice cannot be established "[a]bsent a clear showing that the jury was unable to follow these instructions." *Id*. In addition, we reject Martinez's assertion that he was prejudiced by the obstruction of justice charge itself; the District Court instructed the jury that the indictment was only a charge and not proof of any fact or allegation. Thus, the District Court properly denied his motion for severance.

Martinez next contends that the District Court erred in denying his motion to suppress the statements he made to his co-defendants in the FDC elevator. The Fifth Amendment prohibits the government from using incriminating statements made by the

5

defendant unless it employs procedural safeguards effective to secure the privilege against self-incrimination. *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). This protection only applies to statements made when the defendant is both in custody and subject to interrogation. *Id.* Interrogation refers to express questioning as well as its functional equivalent, *i.e.*, "any words or actions on the part of the police . . . that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980). If the individual indicates his wish to remain silent, he is invoking his right to exercise his Fifth Amendment privilege and the interrogation must cease. *Miranda*, 384 U.S. at 473-74. But "[a]ny statement given freely and voluntarily without any compelling influences is . . . admissible in evidence." *Id.* at 478.

Martinez submits that the federal authorities violated his Fifth Amendment right by interrogating him in the FDC elevator after he had invoked his right to remain silent. He asserts that transporting five defendants in the same elevator inside a prison was a "ploy" amounting to interrogation because the agents should have known that it was likely the defendants would make incriminating statements to each other. We disagree.

In *Arizona v. Mauro*, 481 U.S. 520, 528 (1987), the Supreme Court held that the police did not interrogate the defendant when the police allowed the defendant to meet with his wife, and the officer in the same room recorded their conversation. The defendant was not subject to the functional equivalent of interrogation because there was

6

no evidence that the officer sent the wife in to see her husband for the purpose of eliciting incriminating statements and there were a number of legitimate reasons, not related to securing incriminating statements, for having a police officer present. *Id.* Similarly, in this case, there is no evidence that the federal agents purposely transported the defendants together to elicit incriminating statements. Rather, they were transported together because that was the standard procedure within the FDC, which was a legitimate reason unrelated to securing incriminating statements. Because Martinez was not subject to interrogation or its functional equivalent when he made the incriminating statement, the District Court properly denied his motion to suppress the statement.

Finally, Martinez argues that the District Court erred in denying his motion to suppress the physical evidence seized during a search of his vehicle. He submits that his consent to the search was not voluntary because the police did not inform him of his right to refuse consent. Because the "District Court's determination of voluntariness is a finding of fact[,] . . . we review for clear error." *United States v. Price*, 558 F.3d 270, 278 n.7 (3d Cir. 2009) (citation omitted).

The Fourth Amendment prohibits unreasonable searches and seizures. *Id.* at 277 (citing *Florida v. Jimeno*, 500 U.S. 248, 250 (1991)). However, the "Supreme Court has long approved consensual searches because it is no doubt reasonable for the police to conduct a search once they have been permitted to do so." *Id.* (internal marks and citation omitted). To justify a search based on consent, the consent must have been freely

and voluntarily given. *Id.* (citation omitted). Whether an individual voluntarily consented to a search is determined by examining the totality of the circumstances, which includes "the age, education, and intelligence of the subject; whether the subject was advised of his or her constitutional rights; the length of the encounter; the repetition or duration of the questioning; and the use of physical punishment." *Id.* at 278 (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973)).

The District Court's finding of voluntary consent was not clearly erroneous. Although the police did not inform Martinez of his constitutional right to refuse consent, the subject's "knowledge of a right to refuse is not a prerequisite of a voluntary consent." *Schneckloth*, 412 U.S. at 234. The finding that Martinez's consent was voluntary was not clearly erroneous in light of the police officer's brief encounter, calm demeanor, and lack of repeated questioning, as well as Martinez's immediate consent to the search and his prior experience as a police officer in the Dominican Republic. *See Price*, 558 F.3d at 279-80 (holding district court's finding of voluntary consent not clearly erroneous when police encounter lacked drawn weapons, threats, or prolonged questioning, and consent was given without reluctance or hesitation, even though police did not advise defendant of right to refuse consent).

## IV.

For the reasons set forth above, we will affirm the judgment of the District Court.

8