NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 11-1902
_____

UNITED STATES OF AMERICA

v.

ANTHONY HADAWAY,
a/k/a VINCENT LAMONT JONES
a/k/a LAMONT JONES,

Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
D.C. Criminal No. 09-cr-00161-001
(Honorable J. Curtis Joyner)

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
March 5, 2012

Before: SCIRICA, AMBRO and VAN ANTWERPEN, *Circuit Judges*.

(Filed: March 16, 2012)
_____

OPINION OF THE COURT
_____

SCIRICA, *Circuit Judge*.

Anthony Hadaway was tried and convicted in federal court for interference of

interstate commerce by robbery (18 U.S.C. § 1951(a)). He was sentenced to 293 months'

imprisonment. He raises two arguments on appeal. First, he contends the court abused its

discretion in denying his pretrial motion to sever his charges. Second, he argues the court erred in allowing the government to introduce fingerprint reports assembled by the Philadelphia Police Department, because these reports contained prejudicial hearsay and their entry into evidence violated his rights under Confrontation Clause. We will affirm.

I.

In August 2008, Hadaway committed two robberies at commercial establishments in Southwest Philadelphia. First, on August 1, he entered Fashion Unlimited, a clothing store located at 6127 Woodland Avenue, and pretended to shop for goods. He left without buying anything, and returned approximately fifteen minutes later. Hadaway asked the shopkeeper to fetch him two pieces of merchandise from a wall display. When she did so, Hadaway beat and seriously wounded her, leaving her unconscious. He stole a gold necklace from the shopkeeper's neck, moved the cash register to the back of the store, and stole $600 to $800 from the register. He then fled.

Next, on August 6, 2008, Hadaway entered E-Z Cleaners, a drycleaners located at 701 S. 52nd Street. He dropped off two items, was handed a receipt, and departed. Approximately thirty minutes later, Hadaway returned to E-Z Cleaners and told M.N., the sole owner and employee, that he wanted to retrieve his clothing because the fee was too high. He handed over the receipt, which M.N. put in the trashcan. Hadaway took out a handgun, pointed it at M.N., and climbed over the counter. He stole $100-130 from the register, and took $30, a debit and credit card, and two cell phones from M.N. Hadaway forced M.N. to the back of the store at knife-point, tied her up, and fled.

2

On the day each robbery was committed, Philadelphia police officers investigated the scene promptly. At Fashion Unlimited, they found a latent fingerprint on the cash register. At E-Z Cleaners, they found a fingerprint on Hadaway's receipt in the trashcan. Both fingerprints were analyzed, and each was found to match a set of known prints belonging to the defendant. Hadaway was arrested on August 13, 2008. At the police station, he waived his *Miranda* rights and confessed to both robberies. With respect to the robbery at Fashion Unlimited, Hadaway stated, "I went in there and robbed it." With respect to E-Z Cleaners, Hadaway confessed, "I went in there and asked for the money. . . . I pointed a knife at her [the store employee]. . . . It was a steak knife." He also admitted to "jump[ing] over" the counter, stealing money from the store, and taking two cell phones from the employee.

On March 12, 2009, a grand jury in the Eastern District of Pennsylvania returned a three-count indictment against Hadaway, charging him with two counts of interference of interstate commerce by robbery (18 U.S.C. § 1951(a)), and one count of using and carrying a firearm during a crime of violence (18 U.S.C. § 924(c)). Before trial, Hadaway filed a motion to sever under Fed. R. Crim. P. 14. He argued that consolidating the robbery counts would cause him unfair prejudice, because it would lead the jury to believe he was more likely to be culpable given the presence of two similar crimes. The court denied Hadaway's motion.

Hadaway proceeded to trial. The government's evidence against him consisted of testimony from employees at each store; testimony from the Philadelphia police officers who obtained latent fingerprints from the crime scenes; testimony from Clifford Parson, a

3

fingerprint technician for the Philadelphia Police Department; and testimony from the detective who heard Hadaway's confession. The jury found Hadaway guilty of interference of interstate commerce by robbery, but not guilty of using a firearm during a crime of violence. As noted, the District Court sentenced him to 293 months' imprisonment, as well as ordered three years' supervised release.

## II.[1]

Hadaway contends the District Court erred in denying his motion to sever. We review for abuse of discretion. *United States v. Hart*, 273 F.3d 363, 369 (3d Cir. 2001).

Fed. R. Crim. P. 8(a) provides for the joinder of two or more offenses in an indictment or information when they are "of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." Under Fed. R. Crim. P. 14(a), meanwhile, a "court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires," where joinder "appears to prejudice a defendant." Hadaway concedes joinder of the three offenses was proper in the indictment, but contends the court should have exercised its discretion under Rule 14(a) to sever the offenses at trial.

Hadaway's claim is unavailing. A district court enjoys considerable latitude in deciding whether to sever offenses under Rule 14, with the touchstone being whether a "substantial potential for prejudice" will arise if the trials are consolidated. *United States v. Joshua*, 976 F.2d 844, 848 (3d Cir. 1992). "Mere allegations of prejudice are not

---

[1] The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291.

4

enough; and it is not sufficient simply to establish that severance would improve the defendant's chance of acquittal." *United States v. Reicherter*, 647 F.2d 397, 400 (3d Cir. 1981). In Hadaway's case, the court reasonably concluded that a "substantial potential for prejudice" would not arise from a single trial. The jury could "reasonably be expected to compartmentalize the evidence" against Hadaway for each offense, given that he was being tried for two relatively simple robberies, one of which allegedly involved a gun. *Id.* at 400; *United States v. Weber*, 437 F.2d 327, 332 (3d Cir. 1970). We have upheld a jury's ability to consider multiple charges in cases far more complex than that here. *E.g. United States v. Thomas*, 610 F.2d 1166 (3d Cir. 1979) (holding severance was unnecessary in a case with 31 bank fraud charges).

The District Court properly instructed the jury to consider each offense separately, stating "[t]he number of offenses charged is not evidence of guilt and this should not influence your decision in any way." That the jury convicted Hadaway on Counts One and Two (the two robbery counts) but not on Count Three (using a gun during a crime of violence) confirms it compartmentalized the evidence against him, and was not substantially prejudiced by the joinder of the offenses at trial.

III.

Next, Hadaway contends the District Court erred in admitting evidence of two "Investigation Reports" produced by the Philadelphia Police Department, each concluding that a latent fingerprint found at one of the crime scenes matched the known prints of Hadaway. We review for abuse of discretion. *United States v. Serafini*, 233 F.3d 758, 768 (3d Cir. 2000).

5

The Investigation Reports came into evidence under the business records exception to the hearsay rule, Fed. R. Evid. 803(6), during the government's redirect examination of its expert, Clifford Parson. On direct examination, Parson explained that, in his professional opinion, the latent fingerprints found at Fashion Unlimited and E-Z Cleaners matched those of Anthony Hadaway.[2] On cross-examination, the defense sought to impeach Parson's credibility by pressing him to concede that, in conducting its analyses, the Philadelphia Police Department diverged from some of the professionally recommended standards for conducting "ACE-V" fingerprint identification. The defense also attacked Parson's credibility by suggesting his analysis of one of the sets of prints suffered from "confirmation bias," given that Parson was not the "initial evaluator" for that set. On redirect examination, the government responded to the defense's attack on Parson by introducing the two Investigation Reports compiled by the Philadelphia Police Department, in which three technicians – an initial analyst and two verifiers – made positive identifications of each set of prints. The government's objective was to show that the Department had complied with the widely followed standards for conducting ACE-V, and that Parson's role in the process provided him a sufficiently informed expert opinion.

The court did not abuse its discretion in admitting the Investigation Reports into evidence under Fed. R. Evid. 803(6). Hadaway contends that while the reports might have qualified as business records, they contained a second layer of problematic testimony – namely, the statements of the two fingerprint technicians (besides Parson)

---

[2] The only exhibits the government used during Parson's direct examination were images of the latent prints found at each crime scene, and images of Hadaway's fingerprints. Parson used the exhibits to demonstrate how he was able to make positive matches.

6

who made positive identifications in each report but did not testify at trial. According to Hadaway, this second layer of testimony was unsanctioned by Fed. R. Evid. 805 (prescribing that "[h]earsay included within hearsay" is only admissible "if each part of the combined statements conforms with an exception to the hearsay rule"), as well as by the Confrontation Clause, *see Melendez-Diaz v. Mass.*, 557 U.S. 305 (2009) (holding that a forensic analyst's statements in a laboratory report were "testimonial," and were inadmissible unless the analyst appeared at trial). On the Confrontation Clause point, Hadaway cites *Bullcoming v. New Mexico*, 131 S. Ct. 2705 (2011), where the Court recently held it did not satisfy *Melendez-Diaz* for a scientist to testify about a report compiled by his colleague, even if the two worked at the same lab. Nonetheless, Hadaway's claims are unavailing. On redirect, the government responded to the defense's assertions that the Philadelphia Police Department deviated from the protocols, and about whether Parson's judgment suffered from confirmation bias, by introducing the Investigation Reports. The purpose of the reports was to respond to the defense's attack – to show that the Department had performed ACE-V in a responsible and professional manner, and that Parson was an informed participant in that process with a well-founded expert judgment. Neither Fed. R. Evid. 805 nor the Confrontation Clause were triggered, because the reports were not being offered for the truth of the matter asserted therein nor as "testimony" against Hadaway.

Furthermore, any error in admitting the reports was harmless. When a court errs in making an evidentiary ruling, we may affirm as long as there is a "high probability" it did not contribute to the verdict. *United States v. Molina-Guevara*, 96 F.3d 698, 703 (3d Cir.

1996). When that error is of constitutional proportions, we may affirm only if "it appears beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *United States v. Barbosa*, 271 F.3d 438, 459 (3d Cir. 2001) (internal quotation marks and citation omitted); *see also United States v. Jimenez*, 513 F.3d 62, 78 (3d Cir. 2008 ) (applying harmless error analysis to a Confrontation Clause challenge). Here, both standards – as to the evidentiary error, and as the Confrontation Clause error– are satisfied. First, at the time of the reports' introduction, all of the potentially problematic testimony included therein had already been challenged by Hadaway. During the defense's cross-examination of Parson, Hadaway's counsel asked whether, and how many, persons at the Department besides Parson had positively matched the latent prints to Hadaway's prints. Parson answered that, for each latent, two additional technicians made a positive identification. The only new information that came out during the government's redirect and its introduction of the reports was the name of the two technicians. Second, the remaining evidence against Hadaway – from the testimony of the store employees, to the expert testimony of Clifford Parson on direct, to Hadaway's confession – was more than sufficient to convict. These factors show it is clear "beyond a reasonable doubt that the jury verdict would have been the same absent [any] error." *Barbosa*, 271 F.3d at 460.

IV.

For the foregoing reasons, we affirm the judgment of conviction and sentence.

8