NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-4815
_____

UNITED STATES OF AMERICA

v.

BARRETT BYRON STATON,
                                        Appellant

_____

No. 13-4816
_____

UNITED STATES OF AMERICA

v.

MATTHEW STATON,
                                Appellant

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(D.C. Nos. 2-10-cr-00800-001 & 002)
District Judge: Honorable R. Barclay Surrick
_____

Submitted Under Third Circuit LAR 34.1(a)
March 5, 2015
_____

Before: SHWARTZ, SCIRICA, and ROTH, <u>Circuit Judges</u>.

(Filed: March 26, 2015)

_____

OPINION[*]
_____

SHWARTZ, Circuit Judge.

Matthew and Barrett Staton appeal their convictions and sentences related to a fraudulent scheme involving their photocopier brokerage businesses. We will affirm.

I

Barrett Staton owned copier broker businesses ("Businesses") that employed Matthew Staton and William Haken, Jr., as salesmen. Through the Businesses, Barrett and his team brokered deals between organizations wishing to obtain office copying equipment and financing companies that fund office copier leases. Their customers typically completed a lease agreement and credit application for the equipment that Barrett and his team then submitted to a financing company. If the application was approved, the financing company provided the Businesses money to purchase and install the new equipment. The Businesses retained the remainder of the funds as profit.

To entice customers to enter new leases, Barrett and his team promised significantly lower monthly rates and other discounts, and offered to buy out the customers' existing lease obligations. The Businesses obtained financing for this purpose, but instead of paying off the obligations on the existing leases, Barrett retained much of the money. In addition, Barrett and his team altered signed leases and credit applications to include additional equipment without the customers' knowledge, and

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

2

induced their customers to refinance their existing leases with a second financing company to purportedly obtain a lower monthly payment. The Businesses submitted the applications to the second financing company as if the applications were to lease a new copier, in effect obtaining double funding for a single copier and leaving customers liable for two leases on one machine. Additionally, the Businesses did not return old copiers to the financing companies as promised, leaving the customer responsible for the unreturned copier. To perpetuate the scheme, Barrett periodically closed one business and reopened under a new name using nominees to conceal his involvement.

The grand jury returned a ten-count superseding indictment against Barrett, Matthew, and Haken, alleging that they perpetrated this scheme from 2002 to 2011.[1] The indictment charged each defendant with conspiracy to commit wire fraud and wire fraud; charged Barrett and Haken with three additional three counts of wire fraud; and charged Barrett with four counts of mail fraud related to his efforts to obtain luxury vehicles, and one count of making a false statement on a mortgage application.

Barrett filed various pretrial motions, including motions to dismiss the superseding indictment based on unconstitutional pre-indictment delay, to suppress evidence seized from his residence, garage, and storage facility, and to sever counts under Fed. R. Crim. P. 8 and 14, all of which were denied. Matthew filed a motion to sever his trial from Barrett's, which was also denied.

---

[1] The original indictment was filed on December 9, 2010, and charged that the scheme ended in 2008.

Barrett and Matthew were convicted on all counts following a ten-day trial with testimony from more than forty witnesses, including Haken, who pleaded guilty and testified for the Government. The District Court sentenced Matthew to sixty months' imprisonment and a term of supervised release, and Barrett to 108 months' imprisonment and a term of supervised release. Matthew and Barrett appeal. [2]

## II

## A

Barrett contends that the Government violated the Fifth Amendment by waiting seven years to secure an indictment against him. "[T]he Due Process Clause of the Fifth Amendment protects defendants against oppressive pre-indictment delay within the applicable limitations period." United States v. Sebetich, 776 F.2d 412, 430 (3d Cir. 1985). To prevail on a claim of unconstitutional pre-indictment delay, the defendant must prove that (1) "the government intentionally delayed bringing the indictment in order to gain some advantage over him" and (2) "this intentional delay caused the defendant actual prejudice." United States v. Ismaili, 828 F.2d 153, 167 (3d Cir. 1987). We review the District Court's findings with respect to these two prongs for clear error. Id. at 169.

Here, Barrett failed to show that the delay in obtaining an indictment was intentional, and we agree with the District Court that any delay was "attributable to the process of unraveling the Defendant's many fraudulent schemes," Barrett Supp. App.

---

[2] The District Court had jurisdiction under 18 U.S.C. § 3231. We exercise jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

4

466, which continued until his arrest and thus extended the Government's investigation. See Ismaili, 828 F.2d at 167 n.18. Investigative delay of this nature is "fundamentally unlike delay undertaken by the Government solely 'to gain tactical advantage over the accused,'" and thus, "prosecut[ing] a defendant following investigative delay does not deprive him of due process, even if his defense might have been prejudiced by the lapse of time." United States v. Lovasco, 431 U.S. 783, 795-96 (1977) (internal quotation marks and citation omitted). Moreover, the Government is not required to initiate charges as soon as the requisite proof has been developed because such a rule "would cause numerous problems in those cases in which a criminal transaction involves more than one person or more than one illegal act." Id. at 793. Because the District Court did not clearly err in determining that any delay on the part of the Government was not intentional or used to gain a tactical advantage, it correctly denied Barrett's motion to dismiss the indictment.

B

Barrett also contends that evidence obtained through searches of his residence, garage, and storage facility should have been suppressed. He raised this argument in a pretrial motion to suppress, which the District Court denied as untimely and on its merits. Motions to suppress must be made by the deadline for pretrial motions established by the district court. Fed. R. Crim. P. 12(b)(3)(C), (c)(1). "If a party does not meet the deadline for making a [motion to suppress], the motion is untimely," and deemed waived absent a showing of "good cause" for the delay. United States v. Rose, 538 F.3d 175, 181 (3d Cir. 2008); Fed. R. Crim. P. 12(c)(3).

5

Barrett filed his motion to suppress more than a month after the District Court's deadline for pretrial motions without good cause for the delay. Though Barrett blamed the delay on "internet difficulties," this does not explain why he filed his motion to suppress more than a month after the District Court's deadline and the date he filed his other pretrial motions. Barrett Supp. App. 441. The District Court explained that Barrett "could have filed [the suppression motion] any time after December 14, 2011," the date the warrants were unsealed, yet "waited until twelve days before trial" to do so. Barrett Supp. App. 441. It also noted that Barrett was granted an extension of the pretrial motion deadline and trial date "so that [he] could become familiar with the discovery materials and properly prepare his defense." Barrett Supp. App. 441-42. As Barrett has not challenged the District Court's good cause finding and it is supported by the record, we conclude that the District Court did not abuse its discretion in denying the motion to suppress as untimely.[3]

C

Barrett and Matthew each contend that the District Court erred in denying their respective motions to sever.[4] Barrett premises his claim on the District Court's failure to sever counts, while Matthew contends that his trial should have been severed from Barrett's trial.

---

[3] Because we are affirming the suppression ruling on this basis, we need not review the merits portion of the ruling.

[4] We review a district court's denial of a motion to sever for abuse of discretion. United States v. Lore, 430 F.3d 190, 205 (3d Cir. 2005).

6

Fed. R. Crim. P. 14 provides that the District Court "may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires" if "the joinder of offenses or defendants in an indictment . . . appears to prejudice a defendant or the government." Fed. R. Crim. P. 14. To establish a violation of Rule 14, a defendant must show that the "denial of severance would lead to clear and substantial prejudice resulting in a manifestly unfair trial." United States v. Lore, 430 F.3d 190, 205 (3d Cir. 2005). A court should therefore grant a severance "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." Id. (internal quotation marks and citations omitted).

Neither Barrett nor Matthew has satisfied this "heavy burden." Id. Barrett contends only that he was prejudiced by the joinder of the conspiracy and wire fraud charges with the mail fraud and false statement charges because "what other conclusion could be drawn by a jury in determining the manner in which he conducted his business affairs if not in an allegedly similar fashion." Barrett Staton Br. 55. Barrett's "mere[] speculat[ion] that the jury must have interchangeably applied the evidence presented on the various counts" is precisely the kind of generalized allegation of prejudice that we have found insufficient. United States v. Reicherter, 647 F.2d 397, 400 (3d Cir. 1981) (defendant's allegation that "the jury may have cumulated all the evidence against him" without distinguishing between drug manufacturing and drug distribution charges failed

7

to establish prejudice). Thus, we find no abuse of discretion in the District Court's denial of Barrett's motion to sever charges.[5]

Matthew has also failed to "pinpoint clear and substantial prejudice" from the joinder of his trial with Barrett's. See United States v. Riley, 621 F.3d 312, 335 (3d Cir. 2010) (internal quotation marks and citations omitted). His contention that his "involvement in the business and the crimes was far less," Matthew Staton Br. 10, than that of Barrett, is insufficient to establish prejudice because "a defendant is not entitled to a severance merely because evidence against a co-defendant is more damaging than the evidence against the moving party." Lore, 430 F.3d at 205 (internal quotation marks and citations omitted). Moreover, there is no evidence to support Matthew's assertion that the jury was unable to compartmentalize the evidence presented against Barrett with respect to the mail fraud and false statement charges. Riley, 621 F.3d at 335. The evidence in the case was "relatively straight-forward and discrete" and not "overly technical or scientific." Lore, 430 F.3d at 205; United States v. Walker, 657 F.3d 160, 170-71 (3d Cir. 2011). Furthermore, the District Court instructed the jury to "separately consider the evidence against each defendant on each of the offenses charged" and told the jury that its "decision on any one defendant or any one offense . . . should not influence [its] decision on any of the other defendants or offenses." Barrett Supp. App.

---

[5] Barrett also argues that the conspiracy and wire fraud charges were improperly joined with the mail fraud and false statement charges under Fed. R. Crim. P. 8(b). We review Rule 8(b) joinder de novo, "focus[ing] on the indictment, not on the proof subsequently adduced at trial." United States v. Eufrasio, 935 F.2d 553, 567 (3d Cir. 1991). Because the superseding indictment shows that these counts are all part of the same scheme, the counts were properly joined. See United States v. Walker, 657 F.3d 160, 170 (3d Cir. 2011).

8

264.  Jurors are presumed to follow their instructions, <u>Richardson v. Marsh</u>, 481 U.S.

200, 211 (1987), and we have no reason to doubt that they did so here.  We therefore find

that the District Court did not abuse its discretion in denying Matthew's motion to sever.

D

Barrett contends that the use of computer records at trial and sentencing violated

his Sixth Amendment Confrontation Clause rights because he "was unable to cross

examine [the] computer."[6]  Barrett Staton Br. 24.  He also complains that the witnesses

who "read the computer records . . . lacked the personal knowledge that the computer

apparently had" and the Government failed to "produce the actual data bases or computer

records upon which [the] testimony was based."  Barrett Staton Br. 23.  Barrett seems to

suggest that the witness against him was the computer.  In fact, the witness against him

was the agent who testified about the contents of the computer.[7]  The agent explained

how the computer was searched, identified the computer records obtained from it, and

properly authenticated them.  These records were then admitted and the witness was

subject to cross-examination.  Thus, testimony about the admission of these records did

not violate Barrett's Confrontation Clause rights.[8]

---

[6] This part of Barrett's computer confrontation clause argument fails because the Confrontation Clause is only implicated by hearsay statements, and since a "statement is something uttered by 'a person,' . . . nothing said by a machine . . . is hearsay." <u>United States v. Khorozian</u>, 333 F.3d 498, 506 (3d Cir. 2003) (internal quotation marks and citations omitted).

[7] To the extent the District Court limited Barrett's ability to cross-examine a witness, we review for abuse of discretion.  <u>United States v. Jimenez</u>, 513 F.3d at 76.

[8] To the extent Barrett also claims that the Government violated its disclosure obligations, his claim fails.  The District Court correctly found that the Government fulfilled its disclosure obligations when it allowed Barrett and his counsel to inspect the

E

Barrett next contends that the District Court violated Fed. R. Evid. 404(b) by admitting evidence of his failure to file federal income taxes from 2003 through 2008.[9] Rule 404(b) prohibits admission of other bad acts evidence, meaning acts other than those charged in or that facilitated the crimes charged in the indictment. Rule 404(b), however, does not apply to intrinsic bad acts evidence, i.e., evidence that (1) "directly proves the charged offense;" or (2) demonstrates "uncharged acts performed contemporaneously with the charged crime [that] facilitate the commission of the charged crime." See United States v. Green, 617 F.3d 233, 248-49 (3d Cir. 2010). Evidence that Barrett failed to file federal income taxes together with his use of multiple business fronts from which he received criminally derived income enhanced his ability to conceal his scheme and its proceeds from law enforcement. Because his nonfilings constitute contemporaneous acts that facilitated the commission of the fraudulent scheme, the evidence is intrinsic, and

computer hard drives and electronic devices, provided Barrett with hard drives containing electronic copies of the files, and "took steps to resolve the [software] issues" with the hard drives by both "provid[ing Barrett] with a laptop, install[ing] forensic software," and "purchas[ing] new accounting software." Barrett Supp. App. 416.

Matthew's access to the computer records also undermines his claim that the Government violated Brady v. Maryland, 373 U.S. 83 (1963). Because Matthew failed to identify the evidence to which he purportedly lacked access or describe how this evidence was material or exculpatory, he is not entitled to relief under Brady. See generally United States v. Pelullo, 399 F.3d 197, 209 (3d Cir. 2005).

[9] "We review the District Court's evidentiary rulings principally on an abuse of discretion standard," but "exercise plenary review to the extent such rulings are based on a legal interpretation of the Federal Rules of Evidence." United States v. Green, 617 F.3d 233, 239 (3d Cir. 2010).

hence relevant, to the charges against him,[10] and the District Court did not abuse its discretion in admitting it.

F

Barrett next contends that the District Court erred in denying his motion for judgment of acquittal on his conviction for conspiracy to commit wire fraud.[11]  "To prove a conspiracy, the government must show: (1) a shared unity of purpose; (2) an intent to achieve a common illicit goal; and (3) an agreement to work toward that goal."  United States v. Caraballo-Rodriguez, 726 F.3d 418, 425 (3d Cir. 2013) (en banc).

Haken's testimony about the scheme provided sufficient evidence to convict Barrett of conspiracy to commit wire fraud.  Haken testified that, at Barrett's direction, he offered to buy out the Businesses' customers' pre-existing leases, "promis[ing] that [he and Barrett] would take the remaining payments . . . owed by that customer and [] pay them off in full," Barrett Supp. App. 110, but knowing that the leases "were not going to get paid off."  Barrett Supp. App. 101.  Haken also testified that Barrett devised a plan for what they called "flip deals," in which they promised to pay off their current customers' existing leases and obtain new leases for the same equipment at a lower price with a

---

[10] Even if we held that this evidence was extrinsic, it would nonetheless be admissible under Rule 404(b) because it helps prove Barrett's intent to defraud his customers.  United States v. Saada, 212 F.3d 210, 223-24 (3d Cir. 2000).

[11] We exercise plenary review over the denial of a judgment of acquittal.  United States v. Caraballo-Rodriguez, 726 F.3d 418, 424 (3d Cir. 2013) (en banc).  In reviewing the evidence, "we draw all reasonable inferences in favor of the jury verdict," which we will overturn "only if no reasonable juror could accept [the] evidence as sufficient to support the conclusion of the defendant's guilt beyond a reasonable doubt."  United States v. Anderskow, 88 F.3d 245, 251 (3d Cir. 1996) (internal quotation marks and citations omitted).

11

different financing company. Barrett Supp. App. 115. Haken explained that they did not in fact pay off the existing leases and Barrett, the "primary contact" for the financing companies, did not inform the new financing companies that the Businesses had already leased the same piece of equipment using another financing company. Barrett Supp. App. 111.

Haken also testified that Barrett used fake names when interacting with the financing companies because of "problems" he had had at a "previous company." Barrett Supp. App. 112. He also testified that Barrett asked him to sign and file corporate papers needed to secure a new vendor. When Haken hesitated and told Barrett that, as the owner, Barrett should do it, Barrett explained that he could not "because of his past history" and offered to pay Haken $10,000 to sign and file the papers. This testimony is sufficient to support Barrett's conspiracy conviction.

## G

Lastly, Barrett and Matthew appeal their sentences.[12] Because Matthew's challenge is foreclosed by United States v. Freeman, 763 F.3d 322 (3d Cir. 2014),[13] we need only examine Barrett's challenge to the procedural and substantive reasonableness

---

[12] We review the District Court's sentencing decision for abuse of discretion. United States v. Freeman, 763 F.3d 322, 335 (3d Cir. 2014).

[13] The District Court did not violate Alleyne v. United States, 133 S. Ct. 2151 (2013), when it, rather than the jury, determined the number of victims, the loss amount resulting from the fraud, and that the fraud involved "sophisticated means," as none of these findings "result[ed] in imposition of a mandatory minimum sentence." Freeman, 763 F.3d at 335-36 (internal quotation marks and citations omitted). Rather, they only "influence[d] the sentencing judge's discretion in imposing an advisory Guidelines sentence" and resulted in a sentence "within the statutorily prescribed range." Id. (internal quotation marks and citations omitted). Therefore, Alleyne is not implicated, and we will affirm Matthew's sentence.

of his sentence. The party challenging the sentence bears the burden to show unreasonableness. United States v. Figueroa, 729 F.3d 267, 278 (3d Cir. 2013).

Barrett first contends that the District Court erred in imposing a sixteen-point increase to his base offense level under U.S.S.G. § 2B1.1(b) because there was insufficient evidence to support its calculation that $2,070,529.74 in losses resulted from Barrett's fraud.

The Government must establish the amount of the loss by a preponderance of the evidence. United States v. Ali, 508 F.3d 136, 145 (3d Cir. 2007). Once the Government establishes a prima facie case, the burden of production shifts to the defendant, although the ultimate burden of persuasion remains with the Government. United States v. Evans, 155 F.3d 245, 253 (3d Cir. 1998). The district court "need only make a reasonable estimat[ion] of the loss," U.S.S.G. § 2B1.1 cmt. 3(C), which we review for clear error, reversing only if the loss finding is "completely devoid of a credible evidentiary basis or bears no rational relationship to the supporting data." United States v. Vitillo, 490 F.3d 314, 330 (3d Cir. 2007) (internal quotation marks and citations omitted).

Here, the evidence was sufficient to support the District Court's loss finding. At the sentencing hearing, an FBI agent testified that he obtained the loss figures from interviews with and affidavits prepared by the victims. This method provided an adequate basis for concluding that the loss figures "bear some minimal indicium of reliability beyond mere allegation," such that the District Court could rely on them at

sentencing. United States v. Smith, 751 F.3d 107, 117 (3d Cir. 2014) (internal quotation marks and citations omitted).[14]

Barrett's remaining contentions regarding the loss amounts, particularly that the agent lacked certain information regarding particular loans, failed to account for tax benefits the victims received, and was unsure about the nature of certain loss amounts, are insufficient to disturb the District Court's finding. "Although it is possible that the Government made errors in the course of its calculations, there is no reason to think that its figure was not a 'reasonable estimate' of the loss, established by a preponderance of the evidence." United States v. Fumo, 655 F.3d 288, 310 (3d Cir. 2011). Regardless, Barrett has not shown that the purported inaccuracies would reduce the loss amount to a figure below $1,000,000, the amount that triggers a lower enhancement, and therefore, any such errors would be harmless. United States v. Jimenez, 513 F.3d 62, 89 (3d Cir. 2008).

Barrett also contends that the District Court erred in imposing a sentencing enhancement pursuant to U.S.S.G. § 2B1.1(b)(10). Section 2B1.1(b)(10) provides for a two-point enhancement if the offense "involved sophisticated means." The Commentary defines "sophisticated means" as "especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense" and provides that

---

[14] Nor are we persuaded that the agent's statement that he tried to keep certain calculations "as simple as possible" or Barrett's expert's statement that without supporting documentation, there was insufficient data to "independently validate" the victim affidavits renders the District Court's loss finding "completely devoid of a credible evidentiary basis." Vitillo, 490 F.3d at 330 (internal quotation marks and citations omitted).

14

"[c]onduct such as hiding assets or transactions, or both, through the use of fictitious entities, corporate shells, or offshore financial accounts [] ordinarily indicates sophisticated means." U.S.S.G. § 2B1.1(b)(10), cmt. n9(B). The enhancement applies "when the conduct shows a greater level of planning or concealment than a typical fraud of its kind." Fumo, 655 F.3d at 315 (internal quotation marks and citations omitted).

Barrett employed "sophisticated means" to commit his fraud by operating multiple shell companies, using fictitious names, and submitting fraudulent documents to avoid detection. See Fumo, 655 F.3d at 315 (use of "sham entities . . . to conceal the flow of funds" supports the sophisticated means enhancement); United States v. Cosgrove, 637 F.3d 646, 667 (6th Cir. 2011) ("repeated use of fictitious identities can justify a sophisticated means enhancement, particularly when the identity is reinforced through other deceptive practices."). We therefore find no abuse of discretion in the District Court's application of the enhancement.

We also find no merit in Barrett's suggestion that the District Court failed to meaningfully consider the § 3553(a) sentencing factors implicated by the testimony of his character witnesses and the hardship the sentence would impose on his family. At sentencing, the District Court spoke directly to the concerns Barrett raises on appeal, specifically addressing "the nature of the defendant," noting that it had "no doubt" that Barrett was a "good father" and "loving husband," and lamenting that Barrett's family would "suffer mightily" as a result of Barrett's conduct.[15] Barrett Supp. App. 282.

---

[15] The District Court also properly considered Barrett's lack of remorse and acceptance of responsibility, see United States v. King, 454 F.3d 187, 195 (3d Cir. 2006),

15

Although the District Court did not directly reference the statements of Barrett's pastor and other character witnesses, the District Court implicitly rejected their statements about Barrett's reformed character when it noted Barrett's "absolute denial" of wrongdoing. Id. In short, the District Court meaningfully considered the § 3553(a) factors.

Barrett's sentence of 108 months' imprisonment is also substantively reasonable. A sentence is substantively reasonable "unless no reasonable sentencing court would have imposed the same sentence on that particular defendant for the reasons the district court provided." United States v. Tomko, 562 F.3d 558, 568 (3d Cir. 2009). As discussed above, the District Court appropriately considered the § 3553(a) sentencing factors in imposing a within-Guidelines sentence. In particular, it expressed a "real concern" that Barrett's "absolute denial" of wrongdoing was an indication that he would re-offend. Barrett Supp. App. 282-83. Citing a need to "protect the public," the District Court determined that "a sentence at the low end of the sentencing Guidelines" would be sufficient to "deter others from engaging in this kind of conduct" and "protect the public while [Barrett] is in jail." Barrett Supp. App. 283. As the District Court "reasonably applied," United States v. Bungar, 478 F.3d 540, 543 (3d Cir. 2007), the sentencing factors and considered the multi-year fraud he perpetuated against numerous victims, we cannot say that "no reasonable sentencing court would have imposed the same sentence." Tomko, 562 F.3d at 568. We will therefore affirm Barrett's sentence.

and did not err in not considering Barrett's period of house arrest. The District Court lacks the authority to credit that time toward Barrett's sentence and, in any event, home confinement is not official detention and hence not creditable. Blood v. Bledsoe, 648 F.3d 203, 206 (3d Cir. 2011).

16

## III

For the foregoing reasons, we will affirm the judgments of the District Court.