**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-2528
_____

UNITED STATES OF AMERICA

v.

TONY GRANADO,

<u>Appellant</u>
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Criminal No. 2-09-cr-00471-006)
District Judge: Hon. Paul S. Diamond
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
April 18, 2013

BEFORE: AMBRO, HARDIMAN and COWEN, <u>Circuit Judges</u>

(Filed: April 25, 2013)

_____

OPINION
_____

COWEN, <u>Circuit Judge</u>.

Defendant Tony Granado appeals from the criminal judgment entered by the

United States District Court for the Eastern District of Pennsylvania. We will affirm.

1

I.

This case arose out of the government's investigation of an extensive cocaine distribution ring. This organization, which was led by an individual known as "Primo," imported cocaine from Mexico to El Paso, Texas, transported the drugs to Dayton, Ohio, Philadelphia, Pennsylvania, and the New York City area by means of tractor trailers with secret compartments, and then used the same means to ship the proceeds back to Texas. Following a two-week jury trial, Granado was convicted of conspiracy to distribute five kilograms or more of cocaine in violation of 21 U.S.C. § 846, possession with intent to distribute, and aiding and abetting such possession of, five kilograms or more of cocaine in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2, and distribution, and aiding and abetting distribution, of five or more kilograms of cocaine in violation of § 841(a)(1) and § 2. The District Court sentenced Granado to 360 months of imprisonment and a ten-year term of supervised release.

II.

Granado challenges the District Court's denial of his motion to suppress the statements he made to federal agents at the DEA office in October and November of 2008.[1] We nevertheless agree with the District Court that Granado was not "in custody"

---

[1] The District Court had jurisdiction over this criminal proceeding pursuant to 18 U.S.C. § 3231, and we have appellate jurisdiction under 28 U.S.C. § 1291. "This Court reviews the District Court's denial of a motion to suppress for clear error as to the underlying factual findings and exercises plenary review of the District Court's application of the law to those facts." United States v. Perez, 280 F.3d 318, 336 (3d Cir. 2002) (citing United States v. Riddick, 156 F.3d 505, 509 (3d Cir. 1998)). We review the district court's denial of a motion for a new trial and its decision to admit evidence under Federal Rule of

at the time he made these incriminating statements because "'a reasonable person [would] have felt he or she was at liberty to terminate the interrogation and leave.'" J.D.B. v. North Carolina, 131 S. Ct. 2394, 2402 (2011) (quoting Thompson v. Keohane, 516 U.S. 99, 112 (1995)).  Simply put, DEA Agent Apodaca and two other federal agents approached Granado in a Lowe's parking lot, Agent Apodaca told Granado that he was the subject of a drug investigation and asked if he could meet with the agents to answer some questions, and accordingly the agent gave his name and telephone number to Granado.  Granado then called Agent Apodaca and said that he wanted to talk with the agents, he came on his own to the DEA office for three interview sessions spread out over a seven-day period of time (which, according to Agent Apodaca, lasted for a total of approximately six hours), and he was told each time that he was not under arrest and accordingly left the office on his own.  Even if he was "in custody," Granado nevertheless "voluntarily, knowingly and intelligently" waived his Miranda rights.  Miranda v. Arizona, 384 U.S. 436, 444 (1966).  In particular, the District Court properly rejected the expert opinion offered by Dr. Weiss (who claimed, inter alia, that Granado could not knowingly and intelligently waive his rights due to the Post-Traumatic Stress Disorder resulting from his prior kidnapping and torture by the drug ring) based, inter alia, on the contrary testimony provided by the government's own psychiatric expert, Dr. Ziv.

Evidence 404(b) pursuant to an abuse of discretion standard.  See, e.g., United States v. Butch, 256 F.3d 171, 175 (3d Cir. 2001); United States v. Pellulo, 14 F.3d 881, 886 (3d Cir. 1994).  With respect to a claim of variance between the indictment and the evidence at trial, factual findings are reviewed for clear error, while the district court's application of the law to these facts is reviewed under a plenary standard.  See, e.g., United States v.

The District Court appropriately denied Granado's motion for a new trial because "Defendant provides no grounds to believe that 'an innocent person has been convicted' or that any other 'miscarriage of justice' has occurred." (A38 (quoting United States v. Johnson, 302 F.3d 139, 150 (3d Cir. 2002)).) In short, the government presented extensive evidence of Granado's guilt, including his own detailed statements to the agents in June, October, and November of 2008 (where, among things, he described the structure and workings of the organization headed by "Primo" and admitted that he recruited numerous truck drivers, including Peter Singh) as well as testimony from Singh himself (who, inter alia, identified Granado as the person who recruited him to deliver cocaine and provided him with a truck, described how Granado would give him the cocaine and tell him his destination, and explained that he would then bring the drug proceeds back to Granado).

Finally, the District Court properly disposed of Granado's Rule 404 and material variance assertions. He claims that the statements he made to the agents constituted extrinsic evidence of uncharged criminal conduct and that there was a material variance between the indictment (which alleged a single conspiracy) and the evidence presented at trial (which, at best, purported to show the existence of multiple conspiracies). Nevertheless, this case (as well as Granado's own incriminating statements) implicated a single conspiracy. See, e.g., United States v. Cross, 308 F.3d 308, 320 (3d Cir. 2002) ("For our Court, acts are intrinsic when they directly prove the charged conspiracy."

Camiel, 689 F.2d 31, 37 (3d Cir. 1982).

4

(citing United States v. Gibbs, 190 F.3d 188, 217-18 (3d Cir. 1999))); United States v. Kelly, 892 F.2d 255, 259 (3d Cir. 1989) (observing that Court decides whether there was single conspiracy or multiple conspiracies based on existence of common goal, whether agreement contemplated bringing about continuous results requiring continuous cooperation, and extent to which participants overlapped in various dealings).  In fact, Granado admitted to the federal agents that the heads of the ring's three distribution cells all worked for "Primo" and that he worked for all three cells in various capacities (e.g., he recruited drivers and oversaw the shipments of cocaine and money).  See, e.g., United States v. Padilla, 982 F.2d 110, 115 (3d Cir. 1992) ("As was stated in United States v. DeVarona, 872 F.2d 114 (5th Cir. 1989), the case from which we derived the three-step inquiry, 'a single conspiracy can involve one pivotal figure who directs illegal activities while various combinations of other defendants further those activities in different ways and at different times.'").

## III.

For the foregoing reasons, we will affirm the criminal judgment.